■ In the Matter of the TOWN OF STONY POINT, Respondent, v NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES et al., Appellants. — In a proceeding pursuant to CPLR article 78 to prohibit the State Office of Mental Retardation and Developmental Disabilities and the Letchworth Village Developmental Center from issuing an operating certificate for a certain community residence for mentally retarded persons and from operating such a residence, the appeal (by permission) is from an order of the Supreme Court, Rockland County, dated June 2, 1980, which, upon petitioner's motion for a preliminary injunction, enjoined appellants from (1) issuing an operating certificate for the community residence and (2) operating such residence during the pendency of the proceeding. Order reversed, on the law, without costs or disbursements, and motion for a preliminary injunction denied. Pursuant to section 41.34 of the Mental Hygiene Law, appellants notified the petitioner, by a letter dated November 9, 1978, addressed to the town supervisor, that they intended to locate a community residence for 10 to 14 mentally disabled persons within the geographical limits of the town. The letter specifically referred to the section of law under which the appellants were proceeding and, in addition thereto, recited both the statutory responses which the petitioner could make to the proposal and the 40-day time period within which such responses were due. Appellants also indicated that a specific site had not as yet been identified, but then went on to describe more fully (1) the nature of the contemplated program, and (2) the demands that such a program would place upon the community, i.e., the types of community services that would be called upon. A meeting between the members of the town board and officials of the sponsoring agency (Letchworth Village) was subsequently held in December of 1978, but petitioner failed to suggest one or more suitable sites or object to the establishment of the facility within the time stated in appellants' letter (see Mental Hygiene Law, § 41.34, subd [b], par [1], cl [C]). However, when appellants again wrote to the petitioner in October of 1979 that, having not heard from the petitioner, they were going forward with their previously stated intention to establish a community residence, petitioner responded and indicated in its letter that, after discussing the safety problems engendered by the need of most of the prospective "residents" to rely upon walking as their primary means of locomotion, the town board had concluded that the narrow roads, the narrow rights of way along such roads, and the scarcity of sidewalks in Stony Point precluded "a safe and suitable location for such a residence." Appellants, however, were not deterred and replied in a letter dated December 14, 1979 that (1) they had selected an appropriate site, (2) they would welcome the petitioner's co-operation in the development of that site, and (3) they would be pleased to assist the petitioner in explaining the community residence program to the townspeople. Thereafter, on February 14, 1980, petitioner sent certain unspecified "correspondence" to the State Commissioner of Mental Retardation and Developmental Disabilities, but apparently no reply was ever received. Instead, it received a telephone call on March 6, 1979 from a person connected with Letchworth Village indicating that the projected community residence would, in fact, be established at the selected site. This proceeding to prohibit the establishment and operation of the residence was subsequently commenced, and petitioner has been granted a preliminary injunction enjoining the appellants from proceeding further during its pendency. We reverse the order granting the preliminary injunction. Petitioner has failed to demonstrate either a likelihood of ultimate success on the merits or the existence of irreparable injury, both of which are a *sine qua non* to the granting of a preliminary injunction (see, e.g., *Picotte Realty v Gallery of Homes,* 66 AD2d 978; *Shelborne Beach Club v Hellman,* 49 AD2d 933). In the letter dated November 9, 1978, appellants clearly and unambiguously stated their intentions to the petitioner,

and further indicated (1) that a specific site had not as yet been selected and (2) in a general way, what the community support requirements of such a program would be (i.e., that the residents would be doing their personal shopping in the town and participating in "recreational and leisure time activities available in the community" — "under the supervision of qualified staff"). In addition, the letter went so far as to indicate the alternate courses of action which were available to the petitioner. If petitioner had any objection to the establishment of a community residence within its confines then it was bound by statute to voice its objection at the outset, i.e., within 40 days as indicated in appellants' letter of intent (see Mental Hygiene Law, § 41.34). (We note, in passing, that the grounds for objecting to the establishment of a community residence are quite circumscribed [see Mental Hygiene Law, § 41.34, subd (b), par (1), cl (C) (former); par (5); *Town of Hempstead v Commissioner of State of N. Y. Off. of Mental Retardation & Developmental Disabilities,* 78 AD2d 677].) Having failed to object at that time, petitioner now implies that it could *not* have done so, and therefore should be excused for its omission because (1) appellants were "vague" at the December, 1978 meeting about the residence, (2) the necessary community support systems were not sufficiently set forth in the November, 1978 letter, and (3) a specific site had not been identified in the letter of intent. Beginning, first, with the necessity of showing a likelihood of success on the merits, petitioner has failed to sustain its burden because (1) it failed to object to the establishment of the residence within the 40 days mandated by statute, (2) the statute in question does not require the designation of a prospective situs in the notice of intent, (3) the description therein of the community support requirements of the program appears prima facie to have been sufficient, and (4) petitioners claim of "vagueness" is belied by the specificity of the letter of intent. As regards the second requirement of a preliminary injunction (i.e., the showing of irreparable injury), it is our belief that the mere assertion that petitioner will be unable to prevent the operation of the residence at a later date unless it is halted immediately cannot suffice to carry its burden in this regard. Accordingly, the application for a preliminary injunction was improvidently granted. Hopkins, J. P., Gulotta, Margett and O'Connor, JJ., concur.

